GEORGE ARMSTRONG and ADAM ARMSTRONG, Appellees,
v. ALEXANDER CAMPBELL and MARY CAMPBELL,
Appellants.

**Agency:** CONCEALMENT OF INSTRUCTIONS: FRAUD. The failure of an agent to disclose to one with whom he is dealing for his principal information or instructions received for his own guidance presents no element of fraud or bad faith. Evidence held insufficient to show fraud.

**Same:** QUIETING TITLE: *res judicata.* One cannot maintain an action to quiet title on the ground that a deed executed by him to the land was in fact a mortgage, where the rights of the parties were fully settled by a stipulation, filed in a former action, upon which a decree constituting an adjudication was entered, and where in subsequent actions to set the stipulation aside the decrees were also against him.

*Appeal from Pottawattamie District Court.*—HON. A. B. THORNELL, Judge.

THURSDAY. DECEMBER 17, 1908.

ACTION by plaintiffs to quiet title. Cross-bill by defendants to establish and quiet title in them. Decree for the plaintiffs, and defendants appeal.—*Affirmed.*

*Roscoe Barton* and *W. H. Hale,* for appellants.

*C. A. Meredith, J. B. Rockafellow* and *W. W. Wright,* for appellees.

EVANS, J.—The plaintiffs hold the legal title to the certain lands in dispute, having acquired the same by devise from Robert Armstrong, who died testate June 20, 1892. This testator had held the legal title since March, 1888, having acquired the same by warranty deed from the defendants, who are husband and wife.

The contention of the defendants is that the title was conveyed by them to Robert Armstrong in March, 1888, for the purpose of securing an indebtedness owing by the defendants to Armstrong, and that the deed should be construed as a mortgage. It is doubtful whether there is any competent evidence in the record to support this contention of fact; and, if any, whether by the most liberal inference it can be considered sufficient to support such contention. For the purpose of our consideration, however,

we may assume such to have been the fact. The land in question was in two tracts—one consisting of one hundred and sixty acres and one of eighty acres. At the time of the conveyance to Armstrong, a written lease was entered into by both parties, whereby Armstrong leased the premises back to Campbell, and under which Campbell continued in possession for a number of years. On April 23, 1891, Armstrong and Campbell entered into a written contract, whereby Armstrong agreed to convey the premises to Campbell on January 1, 1892, and whereby Campbell agreed to pay $6,600 for the quarter section, and $2,210 for the eighty acres. Of the larger sum, $2,500 was to be paid in cash, and the balance to be secured by mortgage on the quarter section. Of the smaller sum, $1,000 was to be paid in cash, and the balance to be secured by mortgage on the eighty acres. Time was made of the essence of the contract. In December, 1891, Armstrong (who lived in Illinois) executed deeds in pursuance of the contract, and forwarded the same to a nearby banker, to be delivered to Campbell upon performance of the contract on his part. The banker notified Campbell of the arrival of the deeds, but, for some reason, Campbell did not call for the same nor offer to perform the contract on his part. After holding the deeds for some time after January 1, 1892, the banker returned the same to Armstrong. Thereupon, on February 18, 1892, Armstrong caused to be served upon Campbell a notice of forfeiture of the contract. Campbell's lease by its terms expired March 1, 1892, but he refused to vacate the premises. The year's rent of $450 matured at the same time, but he refused to pay it. Thereupon Armstrong brought three actions against defendant Alexander Campbell, as follows: (1) An action of forcible entry. (2) An action in equity to enjoin the defendant from interfering with the possession of the premises. (3) An action for rent due. On June 20, 1892, while all these actions

were still pending, Robert Armstrong died. His will devised the real estate in controversy to the plaintiffs herein, and they were substituted as parties plaintiff in such actions. In July, 1892, a full compromise and settlement was had of all three actions, whereby the plaintiffs paid to the defendant $1,000 and surrendered to him certain notes and claims for rent amounting to over $1,200, and whereby it was agreed that plaintiffs should have immediate possession of the eighty acres, and that the defendants should continue in possession of the quarter section until February 1, 1893. This settlement was in the form of a written stipulation filed in the pending cases, and providing for the entry of a decree in accordance therewith. A form of decree was attached to the stipulation. The decree in this form was actually entered at the September term, 1892. By this decree the title of the plaintiffs was confirmed and quieted, and the defendant was forever barred from claiming any further interest in any part of the lands. The defendants did not yield possession on February 1, 1893. On the contrary, on February 20, 1893, they brought an action in equity, and obtained a temporary injunction restraining the Armstrongs from taking possession. As a ground for such relief, they averred that the decree entered in pursuance of the stipulation was void, and of no effect because entered in the first instance in vacation. This cause came on for hearing on March 13, 1893, and upon such hearing the injunction was dissolved, and the plaintiffs immediately entered into possession of the premises. On December 22, 1894, the defendant Mary Campbell brought an action in the district court of Pottawattamie County against the present plaintiffs as defendants therein, averring that her signature to the stipulation of July 30, 1892, was obtained by fraud, and asking to set the same aside. The Armstrongs (plaintiffs herein) appeared to such action, and filed a cross-bill, asking that their title be quieted

against the plaintiff. The petition in that case was verified by plaintiff's husband, Alexander Campbell. On February 12, 1896, the plaintiff in that case dismissed her petition, and the court entered a decree for the defendants (plaintiffs herein) on their cross-bill, quieting their title to the premises. This latter decree seems to have terminated active operations for the time being, and the plaintiffs herein have continued in possession of the premises in controversy down to the present time. On the night of July 15, 1906, however, the defendants herein entered a vacant house upon the premises by stealth, and without the knowledge of the plaintiffs or their tenant. They asserted a right to possession and refused to vacate, and thereupon the plaintiffs brought this action.

It has been difficult to discover from the abstracts upon what grounds the defendants claim to avoid the force and effect of the settlement and of the repeated adjudications which we have rehearsed above. The substance of defendants' contention, as made in their pleading and argument, seems to be that they were ready and willing at all times to carry out the contract of April 23, 1891, and that they only failed to do so because of the alleged deceit of George Armstrong as agent of Robert Armstrong. This deceit consisted in the alleged fact that some time in May, 1892, George Armstrong, as agent for Robert Armstrong, had undertaken to settle the controversy with Campbell, and that he withheld knowledge from Campbell of the fact that Robert Armstrong had executed deeds in pursuance of the contract of April 23, 1891, and that the fact so withheld from Campbell was never discovered by him until 1904. It is also averred that George Armstrong was authorized by Robert Armstrong to accept $4,000 cash payment, whereas he demanded $5,000 cash payment.

If this contention were sustained by the evidence, it has no merit in law. George Armstrong was the agent

of Robert Armstrong, and it was his duty to represent

1. AGENCY: concealment of instructions: fraud.

his interests to the best advantage he could. He owed no duty to Campbell to disclose to him any fact of this nature.    The failure of an agent to disclose to an adversary instructions or information received by him from his principal for his own guidance has in it no element of fraud or bad faith.

Turning to the evidence, we find that the contention is utterly without support of fact.    We have already referred to the fact that Robert Armstrong forwarded deeds to the banker, one Theodore Brown of ·Gris-

2. SAME: quieting title: res judicata.

wold, Iowa, in December, 1891.    Brown notified the defendant of the arrival of the deeds, and received from him the following reply: "Griswold, Iowa, Jan. 6, 1892.    Mr. Theodore H. Brown, Banker—Dear Sir: Your notice of having deeds in your possession and awaiting my obligation to be complied with was received.    In reply will say that my wife objects to everything stipulated in the contract on my part.    Time being the essence of the contract, and I being unable to pay the money according to the contract, does not divest the title of the land and she prefers that Mr. Armstrong may enter the debt in judgment against the land in question.    Yours respectfully.    Alexander Campbell."    On the trial of the case at bar this letter was shown to the defendant Campbell, and he admitted that he wrote it.

The later attempted settlement with George Armstrong was in May, 1892.    Concerning this, Alexander Campbell testified as follows: "I had notice that Mr. Robert Armstrong had made deeds of the land back to me, and that they were at Griswold ready to be delivered to me.    The deeds were at Griswold to be delivered to me on the 9th or 12th day of May, 1892.    I have no information except what I got from Armstrong himself.    The deeds were to be delivered to me that day at Griswold.    George Arm-

strong said to me: 'I have full authority to settle for Robert and deliver the deed to me.'" Mrs. Campbell testified in this case as follows, referring, however, to the time that she signed the stipulation of settlement: · "I understood from George Armstrong that day that he had the deeds that Robert Armstrong had signed to deliver to us if we would pay $5,000. That is what he told me, and I told my husband so at that time." It is manifest, therefore, from the testimony that both these parties knew at all times that Robert Armstrong had signed deeds in pursuance of the contract of April 23, 1891, and that the same had been tendered to them. It is useless to inquire now whether the deed given in 1888 to Robert Armstrong was intended as a mortgage. The rights of the parties, whatever they were, were fully adjusted by contract of settlement entered into in July, 1892, and were fully adjudicated by the successive decrees entered in pursuance thereof and in the later litigation. The defendants' present contention is without merit of law or fact.

The decree of the lower court was right, and it is *affirmed*. ·